[Cite as *State v. Finfrock*, 2018-Ohio-5057.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,             CASE NO. 1-18-42

      v.

JOSEPH W. FINFROCK,             O P I N I O N

      DEFENDANT-APPELLANT.

STATE OF OHIO,

      PLAINTIFF-APPELLEE,             CASE NO. 1-18-43

      v.

JOSEPH W. FINFROCK,             O P I N I O N

      DEFENDANT-APPELLANT.

STATE OF OHIO,

      PLAINTIFF-APPELLEE,             CASE NO. 1-18-44

      v.

JOSEPH W. FINFROCK,             O P I N I O N

      DEFENDANT-APPELLANT.

Case Nos. 1-18-42, 1-18-43 and 1-18-44

---

**Appeals from Lima Municipal Court
Trial Court Nos. 18CRB0799, 18CRB0917 and 18CRB01815**

**Judgments Affirmed**

**Date of Decision:    December 17, 2018**

---

**APPEARANCES:**

*Reed D. Searcy* **for Appellant**

*Anthony M. DiPietro* **for Appellee**

**SHAW, J.**

{¶1} Defendant-appellant, Joseph W. Finfrock ("Finfrock"), brings these appeals from the July 26, 2018, judgments of the Lima Municipal Court sentencing Finfrock to an aggregate jail term of 18 months after Finfrock was convicted of three separate counts of Theft in violation of R.C. 2913.02(A)(1), all first degree misdemeanors, and one count of Criminal Trespass in violation of R.C. 2911.21(A)(1), a fourth degree misdemeanor. On appeal, Finfrock argues that the trial court erred by failing to *sua sponte* conduct a competency hearing, that trial counsel was ineffective for failing to raise issues related to Finfrock's competence, that trial counsel was ineffective for failing to object to certain testimony, that there was insufficient evidence presented to convict Finfrock of Theft in trial court case

number 18CRB01815, and that his Theft convictions in trial court case numbers 18CRB00799 and 18CRB01815 were against the manifest weight of the evidence.

*Relevant Facts and Procedural History*

{¶2} There were three separate incidents leading to the charges in this case. The first occurred on March 22, 2018, when Finfrock was at Walmart on Harding Highway in Lima Ohio. An asset protection associate observed Finfrock taking a boxed television off of a shelf in the electronics department and removing the wired "spider wrap," which would sound an alarm if broken. After sliding the spider wrap off of the television box, Finfrock walked up an aisle, found an unused cart, and put the television into it. Then, Finfrock went to the front of the store, got a Pepsi, and paid for the Pepsi at a self-checkout. Next, he tried to leave the store.

{¶3} Finfrock was stopped by a Walmart greeter, and the asset protection associate approached Finfrock. Finfrock said that he had actually bought the television in the back of the store, but did not have a receipt. The asset protection associate indicated he had been watching Finfrock, and knew that was not true. When the asset protection associate asked Finfrock to come to his office, Finfrock left the store. The asset protection associate followed Finfrock outside and called the police, who apprehended Finfrock nearby. Finfrock was brought back to Walmart for identification. This incident led to the first charge of Theft in violation

of R.C. 2913.02(A)(1), a first degree misdemeanor, which was filed in Lima Municipal Court March 26, 2018. It was assigned trial court case 18CRB00799.[1]

{¶4} Thereafter, Finfrock was given a "Notification of Restriction from Property," banning him from being in any Walmart. On May 11, 2018, the same asset protection associate that had dealt with Finfrock at Walmart on the March 22, 2018, Theft allegation was notified that Finfrock was on the property. The asset protection associate attempted to find Finfrock in the store, but was unable.

{¶5} Afterward, the asset protection associate reviewed the closed-circuit security footage and observed Finfrock taking a plastic bag from a closed turnstile in the checkout area, then walking over to take at least four "submarine" sandwiches from the deli area. Finfrock left the store without paying for the sandwiches, which were valued at approximately $20.60. As a result of this incident Finfrock was charged with Theft in violation of R.C. 2913.02(A)(1), a first degree misdemeanor, and Criminal Trespassing in violation of R.C. 2911.21(A)(1), a fourth degree misdemeanor. This incident was assigned to trial court case number 18CRB01815.[2]

{¶6} Finally, Finfrock was charged with Theft in violation of R.C. 2913.02(A)(1) after an incident on June 29, 2018, wherein Finfrock was observed by a loss prevention specialist at Menards taking drill batteries and a pop out of the store without paying for them. As a result of the incident Finfrock was charged with

---

[1] The appeal of this trial court case number was assigned to appellate case number 1-18-42.
[2] The appeal of this trial court case number was assigned appellate case number 1-18-44.

Theft in violation of R.C. 2913.02(A)(1), a first degree misdemeanor. The Theft related to Menards was assigned to trial court case 18CRB01917.[3]

{¶7} Finfrock pled not guilty to all the charges, and he proceeded to trial in each case. The trial on the first television Theft from Walmart was held June 11, 2018. The trial on the second Walmart Theft of the sandwiches and the accompanying Criminal Trespass was held on July 23, 2018. That same date the trial on the Menards theft was held. The asset protection associate from Walmart testified in both Walmart cases and the loss prevention specialist from Menards testified in the Menards theft case. Finfrock testified on his own behalf in all of the cases. He denied taking the television in the first Walmart theft, and denied taking any subs during the second Walmart theft, though he admitted to being at the Walmart as he claimed he had an account with a bank inside. Finfrock admitted to the Menards theft. Finfrock was found guilty of all three Theft charges and the Criminal Trespassing charge.

{¶8} On July 25, 2018, Finfrock's case proceeded to sentencing. It was noted that Finfrock had a *very* extensive criminal history dating back to 1974, including 10 prior Theft offenses and 4 Theft-related offenses, in addition to various other criminal convictions in Ohio, Florida, and Indiana. Finfrock spent time in prison in Florida, Indiana, and Ohio. After reviewing Finfrock's criminal history, the trial

---

[3] The appeal of this trial court case number was assigned appellate case number 1-18-43.

court sentenced Finfrock to serve 6 months in jail on each Theft conviction, consecutive to each other, for an aggregate 18-month jail term. Finfrock was given 30 days in jail on the Criminal Trespassing charge, to be served concurrently with the second Theft from Walmart.

{¶9} Judgment Entries memorializing Finfrock's sentences were filed July 26, 2018. It is from these judgments that Finfrock appeals, asserting the following assignments of error for our review.

**Assignment of Error No. 1**
**The trial court erred in failing to conduct a hearing on appellant's competence to stand trial.**

**Assignment of Error No. 2**
**Appellant's trial counsel was ineffective in failing to raise or explore issues related to appellant's competence and sanity and in failing to object to inadmissible evidence.**

**Assignment of Error No. 3**
**The trial court erred in finding appellant guilty as there was not a sufficient amount of evidence for the trial court to find that the State had established all the elements of R.C. § 29[13.02](A)(1) beyond a reasonable doubt in Case No. 18CRB01815.**

**Assignment of Error No. 4**
**The trial court's decision finding appellant guilty was against the manifest weight of the evidence.**

*First Assignment of Error*

{¶10} In Finfrock's first assignment of error, he argues that the trial court erred in failing to *sua sponte* conduct a hearing on Finfrock's competence to stand

-6-

trial. Finfrock argues that although he never requested a competency hearing, the trial court should have recognized the necessity of the matter.

Relevant Authority

{¶11} The Ohio Revised Code is clear that "A defendant is presumed to be competent to stand trial." R.C. 2945.37(G). Moreover, the Ohio Revised Code also states that a court shall not find a defendant incompetent to stand trial, "solely because the defendant is receiving or has received treatment as a voluntary or involuntary mentally ill patient * * * or because the defendant is receiving or has received psychotropic drugs or other medication, even if the defendant might become incompetent to stand trial without the drugs or medication." R.C. 2945.37(F).

Argument and Analysis

{¶12} At the outset, we emphasize that neither Finfrock nor his trial counsel ever requested a competency hearing before his trials. Prior to the inception of Finfrock's first trial, Finfrock indicated he was not prepared to proceed to trial because he had not received or reviewed discovery. His appointed counsel indicated that discovery had been received and reviewed, and witnesses had been interviewed. Finfrock made no representations at that time regarding his competence.

{¶13} Nevertheless, Finfrock argues on appeal that there were seven issues that should have led to the trial court *sua sponte* ordering a competency hearing.

(1) **On the first trial date, Mr. Finfrock had not reviewed his discovery materials, and unequivocally stated he was not ready for trial. \* \*\***

(2) **Mr. Finfrock referenced his mental health issues during both trials on multiple occasions, stated that he took mental health medication, and that he was seeing a mental health therapist. \*\*\***

(3) **Mr. Finfrock claimed, on multiple occasions, that he had pled not guilty by reason of insanity. \*\*\***

(4) **Mr. Finfrock claimed that things slipped his mind easily because of a car accident he was in as a child. \*\*\***

(5) **Mr. Finfrock, at one point, took a pen from counsel table and placed it in his sock. \*\*\***

(6) **Mr. Finfrock did not seem to remember that he had been to an arraignment for Case No. 18 CRB 01815, that he had received a Complaint, or the initial plea he had entered at arraignment in that case. \*\*\***

(7) **Mr. Finfrock admitted on the stand that he was guilty in Case No. 18 CRB 01917 after demanding to go to trial on the same case. \*\*\***

(Appt.'s Br. at 4-5).

{¶14} After reviewing Finfrock's arguments on appeal, we can dismiss several of them immediately as being inconsequential. First, Finfrock's argument that he was not prepared to go to trial was contradicted by his attorney, and it had no bearing on competence. Second, his claim that he took a pen from counsel table and placed it in his sock similarly may show bad judgment but it does not have any bearing on his competence. Third, his admission on the witness stand that he was

guilty of one of the crimes against him also does not show any lack of competence. In fact, it shows the opposite, indicating that he remembered the event and was able to take responsibility for his actions.

{¶15} Moreover, as to his other claims, there is no indication in any of the trial court dockets that Finfrock ever pled not guilty by reason of insanity in any of these cases, and while Finfrock claimed during his second trial that he did not remember having been arraigned on the case, the file itself indicates that he was present for arraignment and served with the complaint. Finfrock seems to claim that because he apparently "forgot" these things and because he argued at trial that things slipped his mind easily due to a childhood car accident, he was not competent to stand trial.

{¶16} However, there is no indication of a lack of competence in the record. Finfrock participated in his defense and took the stand during the trials, testifying specifically to remembering some of the events, but then conveniently forgetting the criminal acts. He also claimed initially that he had simply forgotten to pay for the Walmart television.

{¶17} Notably, after the trials, a pre-sentence investigation was conducted, wherein it was indicated that Finfrock had been found competent to stand trial when he challenged the issue in a 2014 case. While it is true that in theory Finfrock's mental state could have deteriorated, there is simply no indication in these cases that

the trial court erred by failing to *sua sponte* conduct a competency hearing. On the basis of the record before us we cannot find that the trial court erred, particularly when a defendant is presumed to be competent under the Ohio Revised Code. Therefore, Finfrock's first assignment of error is overruled.

*Second Assignment of Error*

**{¶18}** In Finfrock's second assignment of error, he argues that he received ineffective assistance of trial counsel. Specifically he contends that his trial counsel was ineffective for failing to request a competency hearing and that his trial counsel was ineffective for failing to object to the asset protection associate's testimony during the second Walmart trial.

Standard of Review

**{¶19}** "To establish a claim for ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that counsel's deficient performance prejudiced him." *State v. Hernandez*, 3d Dist. Defiance Nos. 4–16–27, 28, 2017–Ohio–2797, ¶ 12, citing *State v. Phillips*, 3d Dist. Allen No. 1–15–43, 2016–Ohio–3105, ¶ 11, citing *State v. Jackson,* 107 Ohio St.3d 53, 2005–Ohio–5981, ¶ 133, citing *Strickland v. Washington,* 466 U.S. 668, 687 (1984). The failure to make either showing defeats a claim of ineffective assistance of counsel. *State v. Bradley*, 42 Ohio St.3d 136, 143 (1989), quoting *Strickland* at 697. ("[T]here is no reason for a court deciding an ineffective assistance of counsel claim to approach

the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

**{¶20}** We note that a tactical decision by trial counsel, who as a licensed attorney is presumed to be competent, is not by itself enough to show ineffective assistance of counsel simply because the strategy did not result in an acquittal. *State v. Clatyon*, 62 Ohio St.2d 45, 48-49 (1980); *State v. Timm*, 3d Dist. Seneca No. 13-11-23, 2012-Ohio-410, ¶ 31. "Furthermore, trial counsel's failure to object is generally viewed as trial strategy and does not establish ineffective assistance." *State v. Turks,* 3d. Dist. Allen No. 1–08–44, 2009–Ohio–1837, ¶ 43, citing *State v. McKinney,* 11th Dist. Trumbull No.2007–T–0004, 2008–Ohio–3256, ¶ 191; *State v. Conway,* 109 Ohio St.3d 412, 2006–Ohio–2815, ¶ 103.

Argument and Analysis

**{¶21}** Finfrock first argues that his trial counsel was ineffective for failing to raise the issue of his competency as argued in the first assignment of error. However, as Finfrock is presumed to be competent to stand trial and we have no indication that he would be found incompetent, we cannot find any prejudice here. This is especially true given Finfrock's participation in the trial and his evidently clear memory of some of the events. Thus this argument is not well-taken.

**{¶22}** Finfrock next argues that his trial counsel was ineffective for failing to object to the testimony of Walmart's asset protection associate during his second

trial. More specifically, Finfrock contends that the surveillance video of his purported Theft of the sandwiches was not played to the trial court, and was not entered into evidence. He argues that the asset protection associate did not even view the surveillance video contemporaneously with the purported theft; rather, the associate reviewed the video after he could not find Finfrock in the store, only then learning of the potential theft. Finfrock contends that the associate's testimony is a violation of the Best Evidence Rule in Evid.R. 1002. He argues that he may have received an acquittal if his trial counsel objected to the testimony *and* the State did not produce video of the incident.

{¶23} Contrary to Finfrock's argument, we cannot find ineffective assistance of counsel on this issue. Defense counsel could have thought that the testimony itself was less damning and more questionable than if the State introduced the video itself. Defense counsel may not have objected because the video may have made the matter a foregone conclusion. In addition, defense counsel may have forgone an objection on the subject for expedience, knowing that the tape could have been admitted.

{¶24} In fact, since the video was not introduced into evidence, Finfrock was able to testify that he had never actually taken any sandwiches from Walmart, though he was present at Walmart on the day in question. Video might have destroyed any chance he had at an acquittal based on his own testimony. For these

reasons we can find no ineffective assistance of counsel here.  Therefore, Finfrock's second assignment of error is overruled.

*Third Assignment of Error*

**{¶25}** In Finfrock's third assignment of error he argues that there was insufficient evidence presented to convict him of the Walmart theft of sandwiches in trial court case 18CRB01815.

*Standard of Review*

**{¶26}** Whether there is legally sufficient evidence to sustain a verdict is a question of law.  *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  Sufficiency is a test of adequacy.  *Id*.  When an appellate court reviews a record upon a sufficiency challenge, " 'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' "  *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

**{¶27}** On appeal, Finfrock challenges his conviction for Theft in violation of R.C. 2913.02(A)(1), which reads, "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over * * * the property * * * Without the consent of the owner or person authorized to give consent[.]"

Argument and Analysis

**{¶28}** In arguing that there was insufficient evidence presented to support his Theft conviction in trial court case 18CRB01815 regarding the Walmart deli sandwiches, Finfrock contends that the asset protection associate did not give a first-hand account of the incident, but rather merely testified regarding his observations from the security system.

**{¶29}** The asset protection associate did clearly testify that he observed Finfrock on the closed-circuit security footage. He testified that Finfrock took a bag from a turnstile, and that Finfrock went to the deli area and placed at least four submarine sandwiches into the bags, then left the store without paying. The associate testified that Finfrock even tried to leave from one area of the store, but after being stopped by a greeter, he chose to leave from another area of the store.

**{¶30}** This testimony, if believed, would be sufficient to meet the elements of Theft as charged. However, Finfrock argues that the evidence was hearsay, and in violation of the best evidence rule since the State did not introduce the video into evidence. While it may have been hearsay, we already addressed why Finfrock's counsel may have elected not to object to the asset protection associate's testimony. Thus with the testimony that was actually before the trial court, we cannot find that there was insufficient evidence presented to convict Finfrock in trial court case 18CRB01815. Therefore his third assignment of error is overruled.

*Fourth Assignment of Error*

**{¶31}** In Finfrock's fourth assignment of error, he argues that his convictions for Theft from the two Walmart incidents were against the manifest weight of the evidence.

Standard of Review

**{¶32}** Unlike our review of sufficiency of the evidence, in reviewing whether a verdict was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *Thompkins* at 387. In doing so, this Court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.*

Argument and Analysis

**{¶33}** With regard to the Theft of submarine sandwiches from Walmart in trial court case 18CRB01815, we have already determined that sufficient evidence was presented to convict Finfrock. He merely maintains that there was no "admissible" evidence presented to convict him.

**{¶34}** Contrary to Finfrock's argument, the asset protection associate's testimony was before the trial court. In addition, Finfrock testified on his own

behalf, denying that he had taken the sandwiches. Interestingly, Finfrock did admit that he had been in the Walmart that day, indicating that he had gone in to use a bank inside where he claimed to have an account. Finfrock also testified that he walked around the store some. However he denied taking any sandwiches. The trial court was free to find his version not to be credible as the trier-of-fact. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). On the basis of the admitted evidence, we cannot find that Finfrock's conviction was against the manifest weight of the evidence.

**{¶35}** As to Finfrock's Theft conviction for the Walmart television, the asset protection associate testified that he watched Finfrock remove the "spider wrap" security wiring on the television box, then walk over and put it in an empty cart. The associate testified that Finfrock took the cart and went and purchased a Pepsi at the self-checkout kiosks, but he did not attempt to pay for the television. Finfrock then attempted to leave the store, passing the last point-of-sale but was stopped by a greeter who asked for a receipt. The asset protection associate also approached Finfrock at that time.

**{¶36}** Finfrock initially stated that he had paid for the television at the back of the store but did not have the receipt. When the asset protection associate indicated that he had been following Finfrock through the store and knew that

Finfrock had not paid for the television, the asset protection associate testified that Finfrock admitted that he had taken the television.

{¶37} The asset protection associate testified that he then wanted Finfrock to come with him to his office, but Finfrock said he was not going to have anything to do with that and walked out the door. The associate testified that he followed Finfrock outside and called the police.

{¶38} Deputy Barry Friemoth testified that he responded to the call and located Finfrock near the old Kmart, then took him back to the Walmart for identification. The associate identified Finfrock as the culprit.

{¶39} At trial, Finfrock testified on his own behalf that he remembered the date in question, that he had money in his wallet, and that there was no "spider wrap" on the television that he removed. He testified that his mind slipped at times because of a car wreck he was in as a child. He testified that he thought he paid for the television in the back, and that he had money to pay for the television. At the conclusion of the testimony the trial court found Finfrock guilty of the Theft as charged.

{¶40} On appeal, we cannot find that Finfrock's conviction for the March 22, 2018, Theft was against the manifest weight of the evidence. The testimony of the asset protection associate was clear and unequivocal. Finfrock even corroborated some of the associate's testimony. Again, the trial court was free to

disbelieve Finfrock's claimed lack of memory as the trier-of-fact. This seems particularly true given that Finfrock remembered to purchase a Pepsi at the checkout line but not the television in the cart he was pushing. For these reasons Finfrock's fourth assignment of error is overruled.

*Conclusion*

**{¶41}** For the foregoing reasons Finfrock's assignments of error are overruled and the judgments of the Lima Municipal Court are affirmed.

***Judgments Affirmed***

**ZIMMERMAN and PRESTON, J.J., concur.**

**/jlr**